Good morning. May it please the court, I'm James Laughlin and I represent the appellant Virginio Hernandez Martinez. With the court's permission, I'd like to reserve two minutes from rebuttal and I'll keep an eye on my time. Okay. The new version of guideline section 2L1.2b2 requires an upward adjustment if, prior to the defendant's first deportation, he suffers a conviction for which the sentence was a certain length, with a degree of the defendant, Franco Galvin, correctly recognized that a sentence must actually be imposed prior to the first deportation for it to count for purposes of this provision. A post-deportation revocation sentence does not count. This court should reach the same conclusion. As explained in Mr. Hernandez's briefs, all of the canons of construction that are applicable here point to that interpretation was adopted by the Fifth Circuit. On the other hand, the government's contrary interpretation is based entirely on the Sentencing Commission's unexplained failure to carry over one phrase in the definition of sentence imposed when it completely overhauled section 2L1.2 last year. That was the sentence that resolved a circuit split? Correct. And then saying, yes, we think that the sentence imposed has to be before the deportation and can't be something that springs up afterwards. And then they removed that in the, I guess, the 2012 version. It was added in 2012, removed in 2016. In 2016. And so the, certainly the government's implication that it would, or the inference it would have us draw is not unreasonable that the Sentencing Commission had changed its mind about that resolution. Actually, Your Honor, I think it's unreasonable and that's the conclusion that the Fifth Circuit came to in Franco-Galvin. What they said was... Excuse me, sir, but what was the date of the Galvin? Franco-Galvin? That was the subject of my Rule 28J letter. It was last month. Last month. Yeah. So far, it's the only other court that's considered this issue the new version of 2L1.2. Yeah. And what it said there was, you know what? It is. It's a mystery. They didn't say why they removed this language. And sometimes, as they put it, sometimes silence speaks words, but it doesn't speak in this case. Because when we look at the scenario and we look at the fact that the Commission, when this was the sole issue it addressed back in 2012, it put a lot of thought into it. That was the only subject of the amendment. It came up with these detailed reasons for coming to this reasoned conclusion. If, as the government contends, the Commission actually intended to reverse course just four years later, we would expect to hear a clear statement about that. But we don't. And that's why the Fifth Circuit, I think, wisely said, we aren't going to read as much as into that silent omission as the government asks. And I think it's important to realize that the recent amendment to 2L1.2 was part of the major overhaul of the guideline that was really focused on different things, primarily getting rid of the categorical approach, splitting these things up so now we account for both pre-deportation history and post-deportation history. Their attention was just on other matters. So it's understandable why this issue wasn't here. And as the Fifth Circuit noted, they just might not have realized that this issue was still going to arise, even given the way they've restructured the guideline. And they might have just missed it. Contrary to what the government claims, doing what they did, taking that language out of the sentence-imposed definition is not, quote, utterly meaningless. Because that language had to either come out or be changed in some way. Now that the word sentence-imposed is not only used in subsection B2, which involves pre-deportation criminal history, but also in subsection B3, which involves post-deportation. So it's not true that in every case now you would only look to pre-deportation language. And so if I had to guess, that's the reason they struck it out. They did not anticipate the consequences that, once again, this issue that was fully the courts again for it to be resolved. But I also like to point out that putting that aside, the interpretation that has now been, again, re-endorsed by the Fifth Circuit and Franco-Galvin is the only one that's supported by the plain language of the guideline. That guideline, subsection B2, uses the word before. And then the words it uses after are phrased in the past tense. So it's, before his first deportation, did he suffer a conviction for which the sentence imposed was X. The only natural reading of that is that both the conviction and the sentence has to be what was in effect prior to the deportation. The government tries to get around that by saying, well, we could just split it up. Let's just say that it only refers to the first part of the pre-2012 had already addressed with similar languages, like the response was correctly. That's not the most natural reading of the statute. So they recognized an ambiguity and there was a circuit split, so reasonable minds could disagree about how to read it. The Sentencing Commission resolves the ambiguity by adding sentence in the comments. And then they make a revision to the same ambiguity, but they remove the resolving language in the comments. Don't you think that's at least a bit odd? I believe it's a bit sloppy. And I would, my guess would be that it, when, when the commission is aware of Franco Galvin and whatever decision the court renders in this case, they will probably say, oh, you know, we missed, we were, we were focused on other things. We missed something. Maybe we should put that comment or something like it back to clarify this position. But what I do think is, is, would be unreasonable is to say that, that that reflects, as a government wants the court to think, a deliberate and conscious decision to totally reverse course from the prior position. You know, we've cited cases that talk about, like with legislative history, and what we're talking about here is legislative history. To go against the plain language, it really has to be clear and unequivocal legislative history, and certainly unexplained silence of this kind is not the kind of thing that I think can trump the plain language. And as I said, the plain language, I think, is the only one, only supports position that Mr. Hernandez purports to, I'm sorry, proposes, and it, which is the interpretation offered by the Fifth Circuit and Franco Galvin as well. When the district court granted the enhancement, the sentencing, how much of an enhancement was it? It was an eight level where he, we contend he should have gotten a four level. And so what, how did that compute? So that, the resulting change, because the judge also determined that his criminal history was overrated, so he put him in category one. With the higher adjustment, the offense range was 24 to 30 months. It would go down to 12 to 18 months. And what did he get? He got 18 months. So, and I will take a moment to note that his projected release date is only now less than three months away. So we appreciate the court, that the court has been expediting this case. So in other words, if we're going to rule in your favor, get with the program and get a decision out. I appreciate that. I am down to two minutes. You have to do it like in the past to respond. May it please the court, Joe McNally on behalf of the United States. Judge Fletcher, I think where you left off, certainly we hope that the court rules as soon as possible. I will say, you know, this defendant had a prior revocation, I'm sorry, a prior conviction for illegal entry. And when Judge Carter gave him the 18 months and a day, I'm not going to give you the same thing that you got last. So even if I think the court goes the other way, I'm not sure that he ends up, sentencing-wise, where he wants to end up. But in any event, let me, I'm going to pretend I didn't hear that. Okay. Let me, let me step back and I think focus on the legal argument here, which is, which is before the court. The defendant's entire argument rests on the faulty premise that this was not an intentional change, that this was just sloppiness by the sentencing commission. And I think that there's a couple things that I'd ask the court to look at that I think really rebut that. First of all, it is a longstanding principle that when there is a textual change, that that generally is entitled to some meaning. Certainly it's not conclusive. But I think it's supported here by, by two things. You think they were intentionally ambiguous. I think that... They were ambiguous? No, I don't. I think that they struck language as part of a broader remake of the entire guideline. You don't read the relevant provision here as ambiguous? I think that the provision here says any, and as this court has held, any for purposes of statutory interpretation is a broad principle. And they eliminated the amendment that previously limited any to pre-deportation revocations. I was impressed by the sentencing commission saying its analysis was, we want to use the length of the sentence as a proxy for the seriousness of the sentence. And what we're concerned about is, what sentence was imposed before deportation? How long was it? And I didn't see them backing off from that policy issue. In fact, they sort of reconfirmed that, which suggests that the sentencing commission did intend to only look at the length of the sentence that was imposed before deportation. Why isn't that show that the sentencing commission, regardless of whether the ambiguity creeps back in in 2016, didn't intend to depart from its prior resolution of the circuit split? I think that when I look at the 2016 amendment, and I think that you can take a look at page 155 in the primer, what you have, Judge Ikuda, is an effort by the sentencing commission. And I'll tell you, I think the quote that we have cited in our brief is that the definition of sentence imposed is the same definition that appears in Chapter 4. And so what I think you have in 2016 by the sentencing commission is an effort to move the Chapter 2 guidelines so that they're consistent with Chapter 4. And they do that a couple different ways. One, in the 2015 guidelines, you could have no criminal history points, but still get a bump for a prior conviction for immigration purposes. And I think that, so in 2016, they changed that. So if your criminal history washes out, you're not going to get an additional bump under Chapter 2. And I think that this is part of a larger process of moving this in conformity with Chapter 4, which I think the sentencing commission would say best recognizes the sentencing commission obviously has substantial research and says, you know, this is, when we assign a criminal history, this is a pretty good indicator of the threat to the public that an individual represents. And so I think the goal was to move things into conformity with Chapter 4. And certainly, the bottom of the second paragraph, page 155, says the definition of sentence imposed is the same definition that appears in that takes it outside of Chapter 4. You create an exception where under Chapter 4, all revocation sentences count. And this would be an exception, an exception without any support in the text. I also think from a sheer policy standpoint, which I don't think the court needs to get there, but I will say that that is a lot of what the Fifth Circuit, in my view, focused on. They focused on a policy argument that said that when we assess the risk of harm by somebody who comes back illegally into the country, we look at that initial sentence that was imposed by the sentencing judge to approximate that. And I think that the sentencing commission, you know, rejects the proposition that the sentence imposed on the day of sentencing is all that matters and we should ignore everything else. And I think that the logic behind only taking into account the sentence imposed on the day of And I'll give you an example. You may have a district court judge that, you know, gives a guy three years, gives a defendant three years, and another defendant who gets a term of probation for similar conduct because the district court believes that maybe this person is going to go solve their drug problem or their life is on track. I mean, specific offense characteristics that go to less of a likelihood to recidivate. And that person then gets probation and, you know, they're back in front of a district court judge who says, you know, I got it wrong. I took a chance. I was glad I took a chance, but I got it wrong. This is somebody who's not going to obey the court. He has no respect for law. He's going to recidivate. Well, that defendant who breached the court's trust, who's back in front of the court, is treated differently. He basically would only get an eight-level, a four-level enhancement. The other defendant would get an eight-level enhancement. And I think what the sentencing commission recognized with that doesn't make any sense. And so if you look at... You know, I'm not sure that I agree with you. The two different defendants in your hypothetical really are different, as the judge treated them differently. And it turned out that the judge took a chance. It didn't work out. But the assessment of the two judges with the two different defendants were that these really were differently situated. But certainly, Judge Fletcher, the subsequent information that the judge learned about that defendant should come into account in assessing, you know... Well, I'm not so sure. That is to say, I think we could find a reasonable judgment that goes the other way, that we really do have a difference of assessment at the time of initial sentencing. And that it's not implausible that the sentencing commission thought, okay, let's look at that. It makes life simpler. It's a pretty good proxy. So I'm not sure I agree with you that your example compels us to say, well, it just doesn't make any sense. I don't think it compels it necessarily. I would say that there's another side of the coin with respect to the Fifth Circuit's policy arguments. I'd also note that that case is... The government's filed a petition for an en banc rehearing. My understanding, and counsel can correct me if I'm wrong, the Fifth Circuit ultimately hasn't published that and basically largely relies on their prior decision in Bustios-Pena as the basis for that decision. And so either way, you know, I think that there's likely to be a circuit split because the Second Circuit came out differently. I've got an F-3rd cite. You say it's not published? 864 F-3rd 338? Your Honor, that was when I looked at it last night. I didn't give me the darn book. But the printout says with an F-3rd cite. So it looks to me as though it's published. And if you look at it, it does largely rely on their prior decision. And I think that with respect to the government's arguments here that the textual change here compels a different result. They refer to it as a close call. Have they granted the petition for the en banc hearing? I don't believe that they have yet. So the government's just filed it? We have filed it, yes, and I think that we're unusual in granting en banc re-hearings as often as we do. I think we're outliers among the circuits in doing that. And I would say, you know, when you look at the Fifth Circuit's decision, certainly the other side of that is the Second Circuit decision and then also Judge Gorsuch, now Justice Gorsuch's dissent as well as Judge Clement's dissent. You're talking about pre-2012 when they were looking at the original ambiguous guidelines that the Sensing Commission then resolved against them. That's correct. And I think that our position is stronger here today than it was then, given that there was a textual change here. If the court were to conclude that there is an ambiguity, do you agree that the rule of lenity ought to play through the resolution? I think the court would have to find that it was a grievous ambiguity. Grievous, yeah. The only time the rule of lenity comes into play. Is that part of the rule? I think that we don't think that the court needs to get there in light of the textual change, number one. And two... No, but I said if there is a finding of ambiguity, do you agree, do you concede that the rule of lenity has some application here? I think it's the last stop on the road. And I think that there's things that the court can get to before there, which I've discussed during the argument. I think the only final comment, and I see that I'm almost or I am out of time, is if you look at the history of this particular language, I don't think it's tenable that this was somehow a mistake or sloppiness. Certainly, the Sentencing Commission's statement in their own primer confirms that this was an intentional change, and we cite that in our brief. The second thing is, it wasn't lost on the Sentencing Commission that this created a circuit split in 2012. And not only a circuit split, but real meaningful impact in the lives of defendants who are serving different terms in the Second Circuit versus the Fifth Circuit because of that. And so I think the court needs to consider that, and I think that makes it less likely that this was some sort of accident or mistake. There is now a separate section in the guidelines for post-deportation sentences, is that right? There is a separate section in the guidelines that creates an offense-level bump if you come back into the United States and commit new criminal conduct. Yeah, so do you think that supports Mr. Hernandez-Martinez's construction? I don't. I think it's an entirely different analysis. That would be new criminal conduct. This would be a probation violation, which may or may not be new criminal conduct. Thank you. Thank you. You've saved two minutes. Thank you. First, to clarify, in Franco-Galvin, the government filed a petition for panel re-hearing only about nine days ago, and it hasn't been ruled on. What's more, my reading of it, it seems to be based primarily presenting information for the first time, as the government did in its brief, about this immigration primer the commission puts out, which, as I explained in the reply, has no weight whatsoever on reflecting the commission's intent. So I think that that should not cause the court any pause. I'd also like to address the government's comments about the recent amendment being directed at incorporating Chapter 4 into 2L1.2, and I think that's a little simplistic. If the court looks at the lengthy footnote at page 24 of the opening brief, you'll see the sentence-imposed definition actually points to two provisions of Chapter 4, not Chapter 4 generally, and those provisions have no temporal component to them whatsoever. They just define generally what a sentence is. Therefore, when you then have to apply that in the context of 2L1.2 that does have a temporal position, that's what controls here. So nothing about Chapter 4 overrides the temporal requirement that's in 2L1.2 itself. And then just the final point is the government and I do agree that the rule of lenity only comes into play if the other canons do not lead to a result. I happen to think that they lead to a clear and unambiguous result that's consistent with the Fifth Circuit's decision. But if not, if the rule does come into play, then I think the court has to adopt our position because it's clearly plausible as reflected in the Fifth Circuit's decision, and it's the most defendant-friendly version of the plausible versions. Unless the court has any other questions, I'll submit. Okay. Thank you. Your timing was perfect. Thank both sides for very helpful arguments. The case of United States v. Hernandez-Martinez now submitted for decision.
judges: W. Fletcher, Ikuta, Barker